**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

H.L. JAMES
MATTHEW W. JAMES                                                                   PLAINTIFFS

V.                                                                                              CASE NO. 3:07CV108

CITY OF PONTOTOC, MISSISSIPPI                                                DEFENDANT

**MEMORANDUM OPINION**

This cause comes before the court on the motions [68, 95] of the defendant, City of Pontotoc, Mississippi, for summary judgment.

The instant dispute arises out of an attempt by the plaintiffs, H.L and Matthew W. James, to build a Planned Unit Development ("PUD"). The Jameses claim Pontotoc gave them permission to build the PUD, later revoked that permission, and refused to provide utilities to the property in question. Based on these assertions the Jameses have brought claims for a violation of their due process and equal protection rights as well as a negligence action.

Matthew James owns just more than three acres which he hoped to develop, with his father H.L., into a mult-family housing project. Prior to November 2006 the Jameses were told by city employees that the project would require approval by the Board of Aldermen. On November 7, 2006, the Jameses presented a plat to the Board. The Board discussed the project and informed the Jameses they could proceed to the next step. The Board did not, however, vote on the project at that time.

Prior to the next Board meeting H.L. James had an engineer draft a final plat for Board approval. H.L. presented the final construction plans to James Anderson, the city's building inspector. He then presented the proposed plan to the Board at its December 5, 2006 meeting.

The Board indicated it wanted a cul-de-sac included in the final plans, but otherwise voted to approve the plat. On December 6, 2006, Anderson issued a building permit for the first duplex contained in the plans.

The Jameses had the plat revised to include a cul-de-sac. H.L. then delivered seven copies of the revised plat to the Mayor, Bill Rutledge, so that they might be distributed to the Board. The Jameses then began construction on the property.

In January 2007, the Board, in accordance with its normal procedure, adopted the minutes of the prior regular meeting. Those approved minutes indicated Board approval of the PUD was contingent on a plat being approved.

Prior to the April 2007 Board meeting, H.L. presented Rutledge with a plat depicting the sewer and water lines to be connected by the City. H.L. attended the April 3, 2007 Board meeting to seek permission to connect the proposed water and sewer lines. At that time he learned the Board claimed the PUD had never been approved. The Board refused to have the sewer and water lines connected.

Now represented by counsel, the Jameses appeared at the May 1, 2007 Board meeting seeking to have the Board acknowledge its prior approval of the PUD. The Board refused to authorize connection of water and sewer lines claiming the duplex did not meet building codes.

The Jameses brought the instant suit. Pontotoc asks this court for summary judgment arguing H.L James lacks standing to bring these claims, the Jameses never had a protected property interest because the Board can speak only through its minutes, the city has not violated the Jameses' equal protection rights because they can point to no party who has been treated differently, and the City is immune from the negligence claims brought against it.

Summary judgment is appropriate when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S.Ct. at 2110.

Pontotoc firs argues H.L. lacks standing to proceed on these claims because he does not own the property in question. H.L. admits he does not own the property,[1] but argues the project is a joint business venture.

Under Mississippi law "[t]he conditions precedent for the existence of a joint venture are (1) a joint proprietary interest in the enterprise; and (2) a right to mutual control." *Pennebaker v. Gray*, 924 So. 2d 611, 618 (Miss. Ct. App. 2006) (citing *Hults v. Tillman*, 480 So. 2d 1134, 1142 (Miss. 1985)). Essential to a joint venture is an agreement to share in any profits. *Id*. (citing *Hults*, 480 So.2d at 1142-43). It is not required each member make a capital contribution, "[r]ather one party may provide funds and another may put up his labor, skills, or experience in furtherance of the venture." *Id*. (citing *Sample v. Romine*, 8 So.2d 257, 261 (Miss. 1942)) (quoting *Boxwell v. Champagne*, 91 So.2d 256, 261 (Miss. 1956)). "A joint venture can exist in

---

[1] The initial building permit lists H.L. as the owner of the property, but this listing is unrelated to the reality of the situation.

real property even if only one party is listed on the deed." *Id*. at 619 (citing *Sample v. Romine*, 8 So.2d 257, 262 (Miss. 1942))

"The existence of a joint venture may be inferred from the facts, circumstances, and conduct of the parties." *Id*. at 618 (citing *Sample*, 8 So.2d at 261). The burden of proof is on the party asserting a joint venture exists. *Id*. (citing *Davis v. Noblitt & Capers Elec. Co., Inc.*, 594 So.2d 610, 613 (Miss. 1992)). "When the agreement is oral, 'it is left to the court to resolve disputes based on the oral and documentary evidence presented, applying the preponderance of the evidence standard.'" *Id*. (quoting *Davis*, 594 So.2d at 613).

In proving a joint venture exists H.L. claims he made significant contributions toward the venture including money, materials, services, efforts, skill, knowledge, and more. Pontotoc does not dispute this, but instead argues H.L. did not plan to share in any profits.

H.L makes no argument that he expects any to share in any profits nor does the evidence support such a finding. In his deposition H.L. states:

> I've got a property interest that goes on back a long time from the money that, you know, I have transferred over into Matt's, you know, and is what we used to buy, you know, the property with, and develop it, and so forth. And of course, I've got a lot of time and energy in this property too. And the fact is that, you know, I expect no personal gain out of it. This project was set up to build something for Matt's future, not personal money, or gain, or anything now, for future.

When specifically asked about his capital contributions H.L. admitted that money was a gift. Again the attorneys questioned H.L. about his supposed property interest and he stated:

> Well, you know, this goes back even to the Bible, you know, when Jesus said if you've done it to any of mine you've done it to me. When you've done it to my kids, you've done it to me. Now, this doesn't have any basis in, you know, as far as legal terms and everything you're concerned with. We're more or less co-joined in a partnership here that when it hurts one it hurts the other. I mean, you can separate that out in any way you like in legal terms or whatever, but that's basically how it is.

These statements indicate that H.L was heavily involved in the project, but only in order to help his son. Nothing indicates H.L. planned to profit from the venture. Instead he was helping his son to build a business. Matthew James' testimony also supports that conclusion. He stated: H.L. "figured that rental property was a good investment and that it would be here to make money for me, and my wife, and his grandkids when he was gone." Matthew also stated H.L.'s only interest was in getting the project completed.

The court understands H.L.'s desire to help his son. H.L. completed the vast majority of the work on the project, but he did not do it for profit. His only interest is in helping his family. This is certainly an honorable undertaking. However, Mississippi law is clear a joint venture can not exist without an agreement to share in the profits. As such H.L. does not have a property interest in the PUD and does not have standing to bring the instant suit.

Pontotoc next argues Matthew does not have standing to bring a due process claim because he does not have a protected property interest in the PUD. This dispute is over whether Pontotoc's Board created a property interest. There is no disagreement that if the Board approved Matthew's PUD a protected property interest exists. Matthew argues the Board did approve the project and the videotape of the December 5 Board meeting shows as much. Pontotoc argues that a Board speaks only through its minutes and the minutes do not reflect approval of the project.

Under Mississippi law it is well established that public boards speak only through their minutes. *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 298 (5th Cir. 2006) (quoting *Thompson v. Jones County Cmty. Hosp.*, 352 So.2d 795, 796 (Miss. 1977) (citing *Bridges v. Bd. of Supervisors of Clay County*, 58 Miss. 817 (1881)). The Fifth Circuit has held this is an important Mississippi public policy to be strictly enforced. *Id*. at 299. Likewise this

court has recently enforced the minutes requirement relying on a holding that the rule will be enforced even though "'in some instances [it] may work an apparent injustice.'" *Williamson Pounders Architects, P.C. v. Tunica County, Miss.*, 2008 WL 4755421 at *5 (N.D. Miss. October 29, 2008) (quoting *Butler v. Board of Sup'rs for Hinds County*, 659 So.2d 578, 579 (Miss. 1995)).

James does not disagree with this proposition. He argues that the minutes do not reflect the true decision of the board. In support of this proposition he offers a videotape of the proceedings broadcast on local television. James states that a jury should be able to determine the Board's action from the videotape. He argues this case presents an exception to the minutes requirement because the videotape is indisputable evidence of the Board's actions and the policies behind the minutes requirement are not present in the instant dispute.

The reasoning behind the minutes requirement is threefold: (1) to protect a board from being bound by the acts of its individual members or agents; (2) because the public is entitled to the judgment of the board after examination of a proposal, a discussion of it among the board members, and a result representing the wisdom of the majority rather than the opinion or preference of some individual member; and (3) so "that the decision or order when made shall not be subject to the uncertainties of the recollection of individual witnesses . . ., but that the action taken will be evidenced by a written memorial entered upon the minutes at the time, and to which all the public may have access." *Butler*, 659 So.2d at 581; *Lee County v. James*, 174 So. 76, 77 (Miss. 1937).

It is clear the first two policy considerations do not apply in this instance. Whether the third policy is implicated is a more difficult question. The presence of the videotape eliminates problems of reliance on individual recollections. However, there is inherent value in only relying

on "written memorial[s]." Loose talking has caused mischief for more than one public official. Further, it is common knowledge that individuals do not often choose their spoken words as precisely as written words are chosen. This point is raised by Board Member Robert Peeples in his deposition. Peeples points out that his oral statement was only a summary of the Board's decision and did not reflect its full intentions. Mayor Rutledge reiterates this point in his deposition.

Further, Pontotoc keeps an open record of the adopted minutes which any citizen can view. There is no evidence the videotaped is made available to the general public. Based on these factors the court finds the third policy behind the minutes requirement is pertinent to the instant matter. Citizens are best able to understand and hold public officials responsible for their written decisions. Mississippi has decided this is an important public policy entitled to strict performance.

The court does not find the existence of a videotape a basis for creating an exception to the general rule. A videotape is very strong extrinsic evidence of what occurred at the Board meeting. However, the reasoning behind the rule is not affected by the quality of the evidence. The minutes requirement is a substantive rule meant to ensure a permanent written memorial from which all citizens may view the decisions of their elected leaders. The proposed exception would render the requirement an evidentiary rule governed by the particular virtues of the proof put forward. The minutes are not official until approved by the Board as a record of its official action. Any videotape of the proceedings is not approved by the Board and does not constitute an official action. Strict compliance with the minutes requirement prevents this court from looking to the substance of the videotape.

The Board's minutes control in defining the Board's actions. There is no dispute between

the parties that Matthew does not have a protected property interest in a PUD that was never approved. Matthew's interest never vested, because the Board never acted through its minutes. Matthew thus lacks standing to bring his due process claim.

Pontotoc next argues it did not violate James' equal protection rights. James presents two claims to refute this proposition. First, he argues other developers were allowed to build duplexes without Board approval. In support of this claim Matthew offers two exhibits. Exhibit X describes the Sudduth property which contains five proposed duplex units. James claims the construction of these five duplexes required no action by the Board. Exhibit Y is a preliminary site layout of a PUD developed by Jim Davis. James argues this PUD is substantially similar to the plan he submitted and was approved.

Second, James states he is being required to go through a subjective process that no other developer has undergone. In support, he offers mixed deposition testimony about the discretion of the City Planning Commission in approving new PUDs.

The undisputed testimony is that the Sudduth property was built without having a PUD approved. However, all the testimony indicates that the Sudduth property is distinguishable from the James property because of zoning issues. James wished to build a PUD in an area not zoned for such a development. Sudduth built his project in an area for which it was appropriately zoned. Thus the posture of James and Sudduth at the beginning of their projects was clearly different and raised different considerations. The Sudduth project was already approved for the area where it was built. James had to seek approval to build his project in an area where such construction was prohibited. Such a factual scenario does not implicate the Fourteenth Amendment.

The court has virtually no information about the Davis PUD. James offers nothing to

show the Davis' project is similar to his proposal.² The court is uncertain why or how the Davis PUD was approved. Even taking the evidence in the light most favorable to James, this is not enough for a reasonable jury to find James was treated differently than other developers. The only evidence presented is a conclusory statement. James' claim can not survive summary judgment based on this evidence.

It is true that James will have to go through a process which no other developer has gone through. The undisputed facts are that Pontotoc recently adopted a plan to empower a planning commission. No other developer has proposed a project that requires approval by the planning commission. Cities obviously have the power to rely on such commissions. James has made no showing that the commission was created to thwart his attempts to develop the property in question. Prior to implementation of the planning commission system all developers had to present their proposals to the Board. Hence James' original posture. However, the process changed before Matthew was able to secure approval. The commission is in place and James must present his case to them.

James has also raised state law negligence claims. Since the only remaining claims are state law claims, the court has discretion to decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). The Fifth Circuit has noted the "general rule favor[s] dismissal of state claims when the federal claims to which they are pendent are dismissed." *Guizzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999). As such this court will not exercise supplemental jurisdiction

---

² H.L. James has provided an affidavit stating all the facts in the "facts" section of his counsels brief are true. The court find little value in an affidavit which vouches for every fact laid out in an extensive brief. This is especially dubious in light of the Fifth Circuit's holding that "[u]nsubstantiated assertions are not competent summary judgment evidence." *Hugh Symons Group, PLC v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-34 (1986); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)). As such, self-serving affidavits employed to create questions of material fact should be carefully scrutinized by courts. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004).

over the remaining claims. These claims will be dismissed without prejudice so that they may be litigated in state court.

The defendant's motion for summary judgment as to the federal claims is GRANTED.

This the 13th day of April, 2009.

                                                **/s/ MICHAEL P. MILLS**
                                                **CHIEF JUDGE**
                                                **UNITED STATES DISTRICT COURT**
                                                **NORTHERN DISTRICT OF MISSISSIPPI**